```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
                                              :
THE DALZELL MANAGEMENT COMPANY,               :
INC.,                                         :
                                              :
                        Plaintiff,            :     MEMORANDUM & ORDER
                                              :
    - against -                               :
                                              :     11 Civ. 5617 (ER)
BARDONIA PLAZA, LLC., MILTON SHAPIRO,         :
ERIC BERGSTOL, BERGSTOL ENTERPRISES,          :
INC., JOEL BLACK, SHULMAN AND BLACK,          :
LLP, and DOMINIC CAPIO,                       :
                                              :
                        Defendants.           :
                                              :
---------------------------------------------------------------x
```

RAMOS, D.J.:

     Plaintiff Dalzell Management Company, Inc. ("Plaintiff" or "Dalzell") brings this action alleging a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C) (the "CFAA"), and six state law claims arising out of the alleged wrongful eviction of Plaintiff by the Defendants. Defendants move to dismiss the Complaint based on the abstention doctrine of *Colorado River Conservation District v. United States*, 424 U.S. 800 (1976). Docs. 26, 29. For the reasons stated herein, Defendants' motion is DENIED.

**I. Background**

     **a. Facts**

     Plaintiff is a real estate management company owned by Richard Sena ("Sena"). Compl. ¶¶ 13-14. Since approximately 1997, Plaintiff's office has been located at 2 Bardonia Mall in Bardonia, New York (the "Premises"). *Id.* ¶ 18. The Premises is a commercial office building with various offices and business located therein. *Id.* ¶ 19. Plaintiff alleges that Defendants

Bardonia Plaza, LLC ("Bardonia Plaza"), Eric Bergstol ("Bergstol") and/or Milton Shapiro ("Shapiro") own the Premises. *Id.* ¶ 21.

In or around 1997, Plaintiff's prior owner entered into an oral agreement with Bergstol, whereby Plaintiff would occupy the Premises to operate its property management business and would also provide property management services to Defendants. *Id.* ¶¶ 25, 27. The parties also agreed that Plaintiff was to be paid five percent of the base rents collected for each property managed as a monthly management fee. *Id.* ¶ 31.

Plaintiff alleges that it maintained its own computer system where it stored information concerning all properties managed by Plaintiff, including those not owned and/or operated by Bardonia Plaza, Bergstol and Bergstol Enterprises, Inc. (collectively the "Bergstol Defendants"), as well as proprietary and confidential information of the Plaintiff, including Plaintiff's banking information. *Id.* ¶ 37. Additionally, Plaintiff alleges that only Sena had authority to access the server. *Id.* ¶ 36. The Bergstol Defendants were not authorized to access the server or Plaintiff's files. *Id.* ¶ 38.

On or about August 1, 2011, Shapiro met with Sena outside the Premises and gave Sena a Notice of Termination of Employment. *Id.* ¶ 43. When Sena returned to his office, Defendants Bergstol, Dominic Capio ("Capio"), and Joel Black ("Black"), and two information technology employees of Bergstol Enterprises, were there and were in the process of copying the files from Plaintiff's computer server. *Id.* ¶¶ 47-50. At that time, Bergstol also informed Sena that the locks to Plaintiff's office had been changed. *Id.* ¶ 49. Black next asked Sena to provide him with the password to a specific program used by Plaintiff to maintain records on the various

2

properties it manages, but Sena refused; however, Black still managed to access Plaintiff's computer files. *Id*. ¶¶ 57-59.

Sena was later advised that he could return to his office on August 4, 2011 to retrieve his files and belongings. *Id*. ¶ 66. When Sena arrived at the office on the morning of August 4, Capio was present and advised him that he could take the files and belongings that had been placed in boxes. *Id*. ¶ 67. According to Plaintiff, Capio did not have the authority to touch or box Plaintiff's property. *Id*. ¶ 69. The police were called, and shortly thereafter, Bergstol arrived at the Premises with two individuals, *id*. ¶¶ 70-71. With police present, the parties agreed to give Plaintiff's attorney the keys to the Premises. Defendants also agreed that they would not re-enter the Premises or take any of Plaintiff's files. *Id*. ¶ 72. Sena proceeded to take some of his belongings, including the server and computers, and left the Premises. *Id*. ¶ 73.

Later that afternoon, Sena returned to the Premises. *Id*. ¶ 74. According to Plaintiff, Defendants had again called a locksmith who appeared at the Premises to change the locks. *Id*. ¶ 75. Once again in the presence of the police, the parties agreed that the locks could be changed but the police would take possession of the keys until the matter was resolved. *Id*. ¶ 78. Plaintiff alleges that the Defendants have destroyed Plaintiff's business and gained unauthorized access to, and stolen, its computer and paper files. *Id*. ¶ 79.

### b. The Federal Action

On August 12, 2011, Plaintiff commenced a federal action in this Court against the seven named Defendants. Doc. 1. Plaintiff's action alleges: (1) a violation of the CFAA; (2) trespass to chattel; (3) trespass to land; (4) conversion; (5) destruction and loss of Plaintiff's business; and as against Bardonia Plaza, Bergstol and Shapiro, (6) wrongful eviction pursuant to New York

3

State Real Property Actions and Proceedings Law ("RPAPL") § 853 and (7) failure to provide the requisite notice to terminate a license pursuant to RPAPL § 713. Plaintiff seeks monetary relief, as well as injunctive relief enjoining Defendants from accessing, utilizing or disseminating the information taken from Plaintiff's computer system and seeking the return of the copied files.

To date, the parties have filed Fed. R. Civ. P. 26(a)(1) disclosures, Docs. 19, 23, and appeared twice before this Court. Additionally, according to Plaintiff, the parties have exchanged discovery demands. Decl. of Brian K. Condon ("Condon Decl.") ¶ 13. However, according to Defendants, Defendants have served their written discovery requests on Plaintiff but Plaintiff has not served written discovery, nor has it answered Defendants' requests to do so. Defs.' Reply Mem. L. 3.

### c. The State Action

On August 16, 2011, four days after the filing of the federal action, Bardonia Plaza and seven entities not included in the federal action[1] filed a Summons and Complaint in New York State Supreme Court, Rockland County, against Dalzell and three parties not named in the federal action.[2] Bardonia Plaza, LLC, *et al.* v. Dalzell Management, LLC, *et al.*, No. 31894/11, Doc. 1 ("State Compl."); Defs.' Ex. C, Doc. 27-3. Specifically as to Dalzell and Sena, the plaintiffs' action alleges: (1) breach of fiduciary duty; (2) tortious interference; (3) trespass; (4)

---

[1] The seven additional plaintiffs are Crossbridge Shopping Center Holdings. LLC, 110 Demarest Mill Road, LLC., Bard Rock Corp., Rosman Center, LLC, Indian Rock, LLC, Wesley Hills Center, LLC and E&K Property Managers, LLC. Defs.' Ex. C, Doc. 27-3. Aside from working with Bardonia Plaza, Dalzell provided management services for other corporate entities controlled by Bergstol or his mother. The seven additional plaintiffs in the state action are also controlled by the Bergstols. *Id*.

[2] The three additional defendants are Sena, West Ridge Management, Co. ("West Ridge"), and Michael K. Distelhurst, Jr ("Distelhurst"). *Id*. As relates to Defendants West Ridge and Distelhurst, they are alleged to have assisted Dalzell and Sena in the management of the state action plaintiffs' properties. *Id*. As to West Ridge and Distelhurt, the state action alleges: (1) aiding and abetting a breach of fiduciary duty; (2) trespass; and (3) unjust enrichment.

breach of contract; (5) mismanagement and waste; and (6) unjust enrichment.  Plaintiffs seek, *inter alia*, to eject Dalzell and Sena from the Premises; monetary relief; a formal accounting of all accounts payable and receivable for a specified time period; and injunctive relief to, *inter alia*, restore plaintiffs' access to the Dalzell office, obtain the return of documents and records relating to the managed properties, and order defendants to refrain from disseminating plaintiffs' proprietary and confidential information.

The state action plaintiffs claim, *inter alia*, that the parties had agreed to pay Dalzell three to four percent of the monthly rental payments as a management fee; however, Dalzell unilaterally increased the fee to five percent and then hired West Ridge to assist with management of the properties and authorized West Ridge to charge an additional five percent fee for its management role.  The unauthorized increase in management fees, and other incidents, led the state action plaintiffs to terminate the management relationship with the state action defendants.

On October 6, 2011, Dalzell asserted a counterclaim against the state action plaintiffs for breach of contract, concerning the management fee amount.  Bardonia Plaza, LLC, *et al.* v. Dalzell Management, LLC, *et al.*, No. 31894/11, Doc. 25 ("Dalzell Counterclaim"); Defs.' Ex. C, Doc. 27-2.  West Ridge also asserted counterclaims against the state action plaintiffs for breach of contract, trespass to chattel, wrongful eviction in violation of RPAPL § 853, and failure to provide requisite notice in violation of RPAPL § 713.  In their counterclaims, the state action defendants request monetary relief.

This Court, through review of the electronic record in the state action, has learned that on May 17, 2012, the parties requested a stay of discovery until a decision was rendered on the

present motion. Bardonia Plaza, LLC, *et al.* v. Dalzell Management, LLC, *et al.*, No. 31894/11, Doc. 34 ("May 17, 2012 letter"). However, this Court is unable to confirm whether the parties' request to stay discovery was granted. According to Plaintiff, the discovery in the state action has been limited to the exchange of documents; depositions have not been conducted. Condon Decl. ¶ 13; *see also* Defs.' Mem. L. 9 (in the state action, "the vast majority of written discovery has been exchanged."). Additionally, on June 15, 2012, the state action defendants submitted a letter to the state court indicating that if this Court grants the *Colorado River* abstention, "several new claims and new parties will be added to this matter." Bardonia Plaza, LLC, *et al.* v. Dalzell Management, LLC, *et al.*, No. 31894/11, Doc. 36 ("June 15, 2012 letter").

## II. Discussion

### a. *Colorado River* Abstention Doctrine

"Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction.'" *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976) (quoting *McClellan v. Carland,* 217 U.S. 268, 282 (1910)) (internal quotation marks omitted). Abstention from exercising federal jurisdiction "is the exception, not the rule." *Id.* at 813. In *Colorado River*, the Supreme Court explained that "[t]he doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, *is an extraordinary and narrow exception* to the duty of a District Court to adjudicate a controversy properly before it." *Id.* (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89 (1959)) (emphasis added) (internal quotation marks omitted).

In *Colorado River*, the Court held that "in situations involving the contemporaneous exercise of concurrent jurisdiction," a federal court, in "exceptional" circumstances, may abstain from exercising jurisdiction when parallel state-court litigation could result in "comprehensive disposition of litigation" and abstention would conserve judicial resources. *Id.* at 813, 817–18 (internal brackets and quotation marks omitted). "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors . . . as they apply in a given case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16 (1983).

In evaluating whether *Colorado River* abstention is appropriate, a federal district court must consider six factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Moses H. Cone,* 460 U.S. at 16) (internal quotation marks omitted). These six factors are:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Woodford v. Cmty. Action Agency of Greene County, Inc.*, 239 F.3d 517, 522 (2d Cir. 2001). The Supreme Court has explained that none of these factors alone is necessarily determinative, but, instead, a federal district court must engage in a "carefully considered judgment[,] taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise . . . Only the clearest of justifications will warrant dismissal."

7

*Colorado River,* 424 U.S. at 818–19 (citation omitted); *see also Moses H. Cone,* 460 U.S. at 16 (explaining that the "weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case."). Moreover, "[w]here a *Colorado River* factor is facially neutral, that "is a basis for retaining jurisdiction, not for yielding it." *Niagara Mohawk Power Corp.*, 673 F.3d at 101 (quoting *Woodford*, 239 F.3d at 522).

### b. The State and Federal Actions Are Not Parallel

Before engaging in the six-factor analysis, a court must make a threshold determination that the federal and state court cases are "parallel." *Dittmer v. County of Suffolk,* 146 F.3d 113, 118 (2d Cir. 1998) ("[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River.*"). Federal and state proceedings are "parallel" for abstention purposes when the two proceedings "are essentially the same," meaning that "there is an identity of parties, and the issues and relief sought are the same." *Shields v. Murdoch*, 11 Civ. 4917 (PGG), 2012 WL 4097199, at *5 (S.D.N.Y. Sept. 18, 2012) (citation and internal quotation marks omitted). Nevertheless, "[p]erfect symmetry of parties and issues is not required. Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." *Id*. (quoting *In re Comverse Tech., Inc.,* 06 Civ. 1849 (NGG) (RER), 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006)) (emphasis in original) (internal quotation marks omitted). Further, if the court has "any doubt" regarding the parallel nature of the two actions, the outcome should be resolved in favor of exercising federal jurisdiction. *Id.* at *6. Finally, if a court finds that the federal and state actions are not parallel, "*Colorado River* abstention does not apply, whether or not issues of state

8

law must be decided by the federal court." *Id*. (quoting *In re Comverse Tech., Inc.,* 2006 WL 3193709, at *4) (internal citation marks omitted).

Defendants here argue that Dalzell's factual allegations in the federal and state matters, asserted through its Answer and Counterclaims, are "exactly mirrored" as they arise out of the same core allegations: (1) that Bardonia Plaza failed to provide the required notice to terminate Plaintiff's license to occupy the office space; (2) that Bardonia Plaza is in breach of certain oral agreements; (3) that Bardonia Plaza, by its principal and agents, wrongfully entered Plaintiff's office on August 1, 2011 and wrongfully accessed Plaintiff's property, including its computer files; and (4) that Plaintiff's business was damaged as a result of the allegedly wrongful eviction. Defs.' Mem. L. 2. Defendants also argue that although Bergstol, Black and Capio are not parties to the state action, they are necessary witnesses in both the federal and state actions, and further allege that there are an additional four non-party witnesses who would be compelled to appear for depositions, and possibly trials, in both matters. *Id*. 5-7 (citing *Cong. Talcott Corp. v. Roslin*, 95 Civ. 7698 (LAP), 1996 WL 499337, at *3 (S.D.N.Y. Sept. 4, 1996) (finding parallelism, in part, because "[p]resumably, resolution of each matter will be decided on the basis of the same discovery, the same documents, the same depositions, and the same witnesses.")).

In response, Plaintiff argues that the actions are not parallel because the federal action asserts a federal claim (the CFAA claim), there are no counterclaims in the state action based upon the allegedly wrongful access of Plaintiff's computer server, and Plaintiff's counterclaims in the state action only concern the management agreements entered into by the parties. Pl.'s Opp. Mem. L. 6-7.

9

Upon the Court's review, while the state action appears to be based on the same core facts that are asserted in the federal action, there is not otherwise an identity of parties or claims sufficient to find that the actions are parallel. First, while the two actions have a total of twenty parties (eight in the federal action and twelve in the state action), only two—Dalzell and Bardonia Plaza—are parties in both actions. Second, Dalzell's federal action is, at its core, an action for theft of computer data and wrongful eviction. By contrast, at its core, the state action is one for breach of contract and breach of fiduciary duty resulting from Dalzell's mismanagement of state plaintiffs' properties. Additionally, Dalzell's counterclaim for breach of contract in no way "mirrors" its claims in the federal action. Third, abstention would dismiss six defendants—Bergstol, Bergstol Enterprises, Shapiro, Black, Shulman & Black, LLP and Capio—who are not parties to the state action. "Though abstention does not require that the parties in the relevant suits be identical, when dismissal of the federal proceeding would leave a defendant free from *any* proceeding on issues in question, abstention is unwarranted." *DDR Const. Services, Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 645-46 (S.D.N.Y. 2011), *reconsideration denied*, 09 Civ. 9605 (ALC) (JLC), 2012 WL 4711677 (S.D.N.Y. Sept. 26, 2012) (emphasis in original) (citing *Wells Fargo Century, Inc. v. Hanakis*, 04 Civ. 1381 (SLT) (VVP), 2005 WL 1523788, at *9 (E.D.N.Y. June 28, 2005) (noting that though state and federal actions "involve the same loans extended by Plaintiff, the fact that [defendant] is not a party to the State Court Action is a distinction far more significant than the similarity of subject matter.... [T]hat [defendant] would no longer be part of *any* action were the Court to abstain" precluded a finding that the two actions were parallel) (emphasis in original). Here, dismissal of the federal

action would presumably leave six defendants free from any proceeding on the issues in question.

The Court notes that Plaintiff, in the June 15, 2012 letter to the state court indicated that if the federal abstention motion were granted, additional parties would be added to the state action. To date, the six defendants have not been added as parties to the state action and the Court must analyze whether the two actions are "*currently* parallel." *State Farm Mut. Auto. Ins. Co. v. Schepp*, 616 F. Supp. 2d 340, 348 (E.D.N.Y. 2008) (emphasis in original) (citing *Crawley v. Hamilton County Com'rs,* 744 F.2d 28, 31 (6th Cir.1984) ("While it may be true ... that [the state court action] could be modified so as to make it identical to the current federal claim, that is not the issue here. The issue is whether [the state court action], *as it currently exists,* is a parallel, state-court proceeding. Because it is not, we need not undertake the [*Colorado River* analysis]." (emphasis in original))). Furthermore, as previously discussed, "any doubt" regarding the parallel nature of the two actions, including the similarity or relatedness of the parties, should be resolved in exercising federal jurisdiction. *Shields*, 2012 WL 4097199, at *6.[3] As they stand today, the Court finds that the federal and state proceedings are not parallel for purposes of *Colorado River* abstention.

### c. Even if the Actions Were Parallel, Dismissal is Not Required

Even assuming, *arguendo*, that the federal and state actions were parallel, abstention would not be appropriate because the *Colorado River* factors weigh in favor of this Court's exercise of federal jurisdiction.

---

[3] Defendants' argue that although "[t]he captions of the two matters may vary, . . . the corporate entities [named as plaintiffs and defendants] are related as they have either the same principals or managing agents," Defs.' Reply Mem. L. 2, and cite *Cong. Talcott Corp.*, Defs.' Mem. L. 5, for the proposition that actions can be found parallel when "[a]lthough the defendants are not the same, they are closely related." 1996 WL 499337, at *3. As the Court will still analyze the six *Colorado River* factors, Defendants' argument will not be addressed.

11

### i. Exercise of Jurisdiction Over a Res or Property

The first factor in the *Colorado River* abstention analysis is whether either the state or federal court has assumed jurisdiction over any res or property. The parties agree that there is no res or property involved over which either court would assume jurisdiction. Defs.' Mem. L. 7; Pl.'s Opp. Mem. L. 7. Such absence favors the retention of federal jurisdiction. *Woodford*, 239 F.3d at 522.

### ii. Convenience of the Forums

The second factor examines the convenience of the federal forum as opposed to the state forum. The State action is pending in Rockland County and the Federal Action is pending in the Southern District of New York, in White Plains, New York. The parties agree that the state and federal courts are equally convenient, as they are within approximately twenty miles of each other. Defs.' Mem. L. 7; Pl.'s Opp. Mem. L. 8. Where, as here, the federal court is "just as convenient" as the state court, this factor "favors retention of the case in federal court." *Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) (citation and internal quotation marks omitted).

### iii. Avoidance of Piecemeal Litigation

The third *Colorado River* factor involves an analysis of whether the federal action must be dismissed in order to prevent piecemeal litigation. *Vill. of Westfield,* 170 F.3d at 123. Defendants argue that "if the Federal Matter and State Matter are allowed to proceed simultaneously, not only will there be duplicative discovery, depositions, and potentially trial testimony, but on [Plaintiff's] State law claims there lies the potential of conflicting verdicts." Defs.' Mem. L. 8-9. However, as noted by the court in *Shields*, "the mere potential for

12

conflicting outcome[s] between the two actions does not justify abstention under the piecemeal litigation factor." *Shields*, 2012 WL 4097199, at *10 (quoting *In re Bank of Am. Corp. Secs.,* 757 F. Supp. 2d 260, 345 (S.D.N.Y.2010) (internal quotation marks omitted); *see also id.* (citing *In re Comverse Tech., Inc.*, 2006 WL 3193709, at *6 ("[T]he potential for piecemeal litigation is always present in potentially parallel litigations, and the courts must look beyond this factor to ascertain whether abstention is appropriate.")) (internal quotation marks omitted).  Moreover, while failing to dismiss the federal action might lead to "some amount of duplication" due to the similar factual and legal issues, such duplication "does not weigh significantly in favor of abstention." *Shields*, 2012 WL 4097199, at *10 (citation and internal quotation marks omitted).

An additional area for consideration in the piecemeal litigation analysis is whether resolution in one forum would resolve the claims for all parties. *Id*. at *11.  Abstention is "more appropriate" when the parties to the state and federal actions are "not identical" as there is a "possibility that the parties who are not bound by the prior judgment may cause inconsistent judgments in subsequent lawsuits." *Id*. (quoting *Fischmann v. VisionTel.,* 934 F. Supp. 115, 118 (S.D.N.Y. 1996)) (internal quotation marks omitted).  The Second Circuit has further noted that:

> the primary context in which [it] [has] affirmed *Colorado River* abstention in order to avoid piecemeal adjudication has involved lawsuits that posed a risk of inconsistent outcomes not preventable by principles of res judicata and collateral estoppel. The classic example arises where all of the potentially liable defendants are parties in one lawsuit, but in the other lawsuit, one defendant seeks a declaration of nonliability and the other potentially liable defendants are not parties.

*Woodford,* 239 F.3d at 524.  Here, as the federal and state actions are based on the same underlying facts, there is some risk of an inconsistent result; this Court could make a

13

determination on common issues which might not bind the parties named only in the state court action.[4]

However, "any case involving parallel proceedings presents a risk of duplicative litigation or a rush to judgment, the existence of those risks can *weigh only modestly in favor of dismissal; otherwise dismissals pursuant to Colorado River would be the rule, not the exception*, in cases involving parallel proceedings in state and federal court." *In re Asbestos Litig.*, 963 F. Supp. 247, 253 (S.D.N.Y. 1997) (citation and internal quotation marks omitted) (emphasis added); *see also Suffolk Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 829 F. Supp. 2d 82, 87 (E.D.N.Y. 2010) (same).  It is also worth noting that Defendants here are the ones who brought the state court action after Plaintiff had filed an action in federal court, thereby creating the potential for piecemeal litigation of which they complain.  Furthermore, six defendants in the federal action have not in fact been joined to the state action, and may never be if this Court retains jurisdiction.  *In re Asbestos Litig.*, 963 F. Supp. at 253 ("A risk of inconsistent results alone will not outweigh the heavy presumption against abstention.  This is particularly true where [defendant] has not in fact been joined to the state action, and may never be if the federal

---

[4] In support of their argument that the avoidance of piecemeal litigation "clearly favors dismissal," Defendants cite to *Goldentree Asset Mgmt., L.P. v. Longaberger Co.*, 448 F. Supp. 2d 589, 594 (S.D.N.Y. 2006) and *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985).  Defs.' Mem. L. 8.  However, those cases are distinguishable.

In *Goldentree*, the court found that the avoidance of piecemeal litigation weighed heavily in favor of abstention because "both the state action and federal action involve the same parties, and concern identical claims, specifically an allegation of a contractual breach."  *Goldentree Asset Mgmt.*, 448 F. Supp. 2d at 594.  Here, the parties in both actions are not identical and there are different claims asserted in both actions.

In *Arkwright*, there were hundreds of claims and numerous parties, and the state litigation had already been assigned to a single state-court judge, making it likely that the numerous claims arising out of the same incident would be consolidated for all purposes in a single state action.  *Arkwright-Boston Mfrs. Mut. Ins. Co*, 762 F.2d at 211.  Further, if the federal court refused to abstain, the various parties could be burdened for years to come.  *Id.*  The federal and state actions here are not nearly as complex as the numerous state court actions in *Arkwright*.

court retains jurisdiction."). Accordingly, this factor—avoidance of piecemeal litigation—is neutral.

### iv. Order in Which Jurisdiction Was Obtained

The fourth *Colorado River* factor involves an analysis of "the order in which jurisdiction was obtained." *Vill. of Westfield,* 170 F.3d at 121. "This factor does not turn exclusively on the sequence in which the cases were filed, but rather in terms of how much progress has been made in the two actions." *Id.* at 122 (citing *Moses,* 460 U.S. at 21) (internal quotation marks omitted).

The Plaintiff commenced the federal action on August 12, 2011. To date, the parties in the federal action have filed Fed. R. Civ. P. 26(a)(1) disclosures and have appeared twice before the Court. Additionally, according to Plaintiff, the parties have exchanged discovery demands. However, according to Defendants, Defendants have served their written discovery requests upon Plaintiff but Plaintiff has not served written discovery, nor has it answered Defendants' requests to do so.

Four days after the filing of the federal action, on August 16, 2011, Bardonia Plaza and seven entities not included in the federal action commenced the state action. On October 6, 2011, Dalzell asserted counterclaims against the state action plaintiffs for breach of contract. On May 17, 2012, the parties requested a stay of discovery until a decision was rendered on the instant motion. However, the Court is unable to confirm whether the parties' request to stay discovery was granted. Moreover, according to the parties, discovery in the state action has been limited to the exchange of written discovery and depositions have not been conducted.

Upon review of the actions, the federal and state proceedings seem to be in a holding pattern pending the resolution of the instant motion and the progress of the two actions is

substantially equal.  Accordingly, this factor is neutral.  *See generally Estee Lauder Cos. Inc. v. Batra*, 430 F. Supp. 2d 158, 168 (S.D.N.Y. 2006).

### v. Law Supplying the Rule of Decision

The fifth *Colorado River* factor requires a review of what law—state, federal, or foreign—provides the rule of decision in the case.  *See Moses H. Cone,* 460 U.S. at 23.  "When the applicable substantive law is federal, abstention is disfavored," and, in fact, even "the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex."  *Vill. of Westfield,* 170 F.3d at 123–24 (internal quotation marks omitted).  Further, "the Supreme Court has explained that although in some rare circumstances the presence of state-law issues may weigh in favor of a federal court's surrender of its jurisdiction, the presence of federal-law issues must always be a major consideration weighing against surrender."  *Niagara Mohawk Power Corp.*, 673 F.3d at 103 (quoting *Moses H. Cone,* 460 U.S. at 26) (internal quotation marks omitted).  Here, Plaintiff's claims arise under both federal (the CFAA claim) and state law.  Further, Plaintiff's state law claims—trespass to chattel, trespass to land, conversion, destruction and loss of business, wrongful eviction under RPAPL § 853, and failure to provide requisite notice to terminate a license under RPAPL § 713—are not particularly novel or complex.  Accordingly, this factor weighs against abstention.  *Kshel Realty Corp. v. City of New York*, 01 Civ. 9039 (LMM), 2003 WL 21146650, at *6 (S.D.N.Y. May 16, 2003) (finding that abstention was not warranted where "federal law will provide the rule of decision for two issues.").

16

### vi. Adequate Protection of Plaintiff's Rights

When reviewing the sixth *Colorado River* factor, a federal court must determine "whether the 'parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.' " *Vill. of Westfield,* 170 F.3d at 124 (quoting *Moses,* 460 U.S. at 28). "If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the . . . dismissal at all." *Moses,* 460 U.S. at 28. Here, there is no serious question that the state action can adequately protect Plaintiff's procedural and substantive rights and provide a fair forum that will promptly resolve the parties' claims. Plaintiff has not identified any conceivable jeopardy or prejudice to its rights should its claims be decided by the state court rather than this court. Plaintiff merely states that "a review of the number of state cases in New York on Westlaw that cite to the [CFAA] is twelve (12) . . . The number of federal cases that cite to the statute in total is 1,064, with 98 decisions rendered by the District Courts in New York." Pl.'s Opp. Mem. L. 10. Nevertheless, the ability of the state court to adequately protect Plaintiff's interests only makes this factor neutral. *Estee Lauder Cos. Inc.*, 430 F. Supp. 2d at 169. "Although any possible inadequacy of the state forum to protect the federal plaintiff's rights would provide a strong reason to exercise federal jurisdiction, the adequacy of the state forum does not weigh heavily in favor of dismissal pursuant to *Colorado River.*" *Id.* (quoting *In re Asbestos Litig.,* 963 F. Supp. at 253) (internal quotation marks omitted); *see also Dunkin' Donuts Franchised Restaurants LLC v. Rijay, Inc.*, 06 Civ. 8237 (WCC), 2007 WL 1459289, at *6 (S.D.N.Y. May 16, 2007) ("The fact that the state court is competent to adjudicate plaintiff's claims is largely irrelevant.").

### III. Conclusion

In light of the heavy presumption favoring the exercise of federal jurisdiction, the Court finds that the "exceptional circumstances" required for abstention by *Colorado River* are not present here. *See Vill. of Westfield*, 170 F.3d at 124. None of the six Colorado River factors weigh in favor of abstention. *See Moses H. Cone,* 460 U.S. at 16 (*"Only the clearest of justifications will warrant dismissal"* (quoting *Colorado River,* 424 U.S. at 819) (emphasis in original)) (internal quotation marks omitted). Accordingly, Defendants' motion to dismiss this action pursuant to the *Colorado River* abstention doctrine is DENIED. The Clerk's Office is respectfully directed to terminate the motions (Docs. 26, 29). The parties are directed to appear for a pre-trial conference on February 28, 2013 at 11:30 a.m.

It is SO ORDERED.

Dated: February 15, 2013
      White Plains, New York

                                                                         Edgardo Ramos, U.S.D.J.